**AMERICAN LUGGAGE WORKS, Inc., et al.**

v.

**UNITED STATES TRUNK CO., Inc., et al.**

Civ. A. No. 57–159.

United States District Court
D. Massachusetts.

Dec. 6, 1957.

Richard L. Johnston, Lloyd C. Root, Marzall, Johnston, Cook & Root, Chicago, Ill., Herbert P. Kenway, Kenway, Jenney, Witter & Hildreth, Boston, Mass., for plaintiff.

Isador S. Levin, Fall River, Mass., Herbert B. Barlow, Providence, R. I., for defendant.

WYZANSKI, District Judge.

Defendant, United States Trunk Co., moved for judgment against plaintiff, American Luggage Works, Inc., at the close of plaintiff's evidence on its cause of action alleging unfair competition. The issue turns to some extent on two questions; first, the admissibility and second, the persuasiveness of experts' testimony relating to a poll they designed and conducted to determine consumer attitudes.

Stated liberally, plaintiff's claim is that it has developed a design for suitcases; that this design has acquired a secondary meaning, so that the public associates the design with a particular source, to wit, the plaintiff; that defendant copied this design; and that customers are likely to be confused by defendant's wares into purchasing them when they intend to purchase plaintiff's products. To succeed plaintiff must establish, among other elements, that its suitcase design had acquired a secondary meaning and that defendant's product would be likely to produce confusion. General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853. Moreover, plaintiff's burden is to show that this secondary meaning and this risk of confusion exist in the same potential market. This point is of special importance in this case since there is a wholesale market catering to retail dealers in luggage and a retail market catering to ultimate consumers.

To meet its burden of proof, plaintiff offered the goods manufactured by the opposing parties, the testimony of a design expert who showed the marked resemblance of the goods, and the testimony of those who designed and conducted a poll of retail dealers of luggage.

Without the poll, plaintiff clearly cannot prevail. For without the poll there is no evidence whatsoever that plaintiff's design had acquired a secondary meaning in any market. This by itself would be a fatal flaw, Algren Watch Findings Co. v. Kalinsky, 2 Cir., 197 F.2d 69, 72. Moreover, without the poll there is on the issue whether there was a likelihood of confusion between plaintiff's and defendant's products only the evidence of the appearance of plaintiff's and defendant's merchandise together with an analysis of that appearance by plaintiff's design expert.

Perhaps because they were not adequately instructed by counsel as to the precise scope of the issues in this litigation, the experts who laid the groundwork for the poll designed a survey directed exclusively at independent retail dealers of luggage. In that "universe" as the statisticians call it, [see Note on "Public Opinion Surveys as Evidence: The Pollsters Go to Court" 66 Harv.L.Rev. 498, 499], the experts took a "sample" from the independent luggage dealers listed in the yellow classified telephone books for Manhattan County, New York and for Metropolitan Boston. For present purposes we may assume that the process of selection from the telephone books was fair and that the division of those selected among the three investigators was also fair. To those selected for the sample, the experts sent one of three investigators,—each of whom came to court prepared to testify. Each investigator would have testified that when he saw a retail dealer he had with him one but only one of these three photographs: one was a photograph of one of plaintiff's bags; another, of one of defendant's bags; and the last, of a third company's bags. Showing the one photograph to the person polled, the investiga-

tor asked each selected retail dealer the following questions:

1.  Have you ever seen the luggage shown in this photograph?
    Yes —— No —— Don't know ——
2.  Can you tell me what brand of luggage it is?
    Yes —— Brand of luggage ——
    No ——
3.  If "no" on 2, from this list can you identify the brand name of this luggage?
    Tri Taper
    Socialite
    Emerald
    Hartmann
    Skyway
    Samsonite
    Don't know
    Other name
4.  What brands of luggage do you carry?

When the investigators had completed the survey they reported their results to a Boston University professor. He tabulated and analyzed the results. He testified that of the 29 retailers shown the photograph of plaintiff's bag, 23 correctly identified it, 3 thought it was defendant's bag, and 3 made other errors. Of the 51 retailers shown defendant's bag, 16 correctly identified it, 15 thought it was plaintiff's, and 20 made other errors. Of the 35 persons shown the third type of bag, 31 correctly identified it.

■■ In considering the admissibility of this survey, the first point is to note its limited relevance. Those who designed the survey apparently did not fully appreciate the legal consequences of the point that there were at issue in this case two markets,—one wherein retailers were customers and the other wherein ultimate consumers were customers. Of course, the fact that a dealer associates a particular design with a particular source does not tend to show that the same association is made by an ordinary consumer unfamiliar with the intricacies of the trade. Indeed one of the advantages men in a particular business have over the rest of us is that the former are experts in distinguishing the sources from which goods in that field come. The survey, having been limited to retailers, is inadmissible to show that in the market of ultimate consumers the plaintiff's design had acquired a secondary meaning. There being no other evidence that plaintiff's design had in the ultimate consumers' market an established connotation, plaintiff has not borne its burden on that aspect of its case. This conclusion makes it unnecessary for this Court to decide whether plaintiff has borne its burden of proving that ultimate consumers are likely to be confused by the similarity of plaintiff's and defendant's bags. General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853, 854–855. Lucien Lelong, Inc. v. Lander Co., 2 Cir., 164 F.2d 395, 396.

■ So far as concerns the retail dealer market, the problem is more sophisticated. We must bear in mind that the result of the poll was offered for two purposes: to show both secondary meaning and likelihood of confusion. It is by no means clear that for these two problems it was appropriate to take the same universe, or to take the same sample. Nor is it clear that in this case the exclusions and inclusions were all defensible. By way of illustration, it may be noted that the universe included retail dealers who never carried plaintiff's bags, or defendant's bags, or any other type of plastic bag; it excluded those who sold luggage at retail in department stores and chains. Put another way, there were included retail dealers whose likelihood of confusion was unimportant because they were not shown to be potential customers, and there were excluded a whole type of potential customers who may do far more than a trivial percentage of the business in the Borough of Manhattan and in the Greater Boston community.

More serious than these objections, the survey was conducted by showing the interviewee not the bags themselves but photographs. The photographs were not

true representations of the bags. Two of them entirely failed and one of them partially failed to show the manufacturer's name tags which are prominent in several places on the bags themselves. These distortions are fatal to the proffer of the evidence on the issue of confusion of retail dealers. For the fact that a retail dealer does not recognize an unlabeled bag is no indication that he would not recognize a labeled bag.

■ Furthermore, another and most significant reason why the evidence of the poll is inadmissible on the issue of confusion is that under the substantive law the issue is not whether the goods would be confused by a casual observer, (trained or untrained, professional or lay,) but the issue is whether the goods would be confused by a prospective purchaser at the time he considered making the purchase. If the interviewee is not in a buying mood but is just in a friendly mood answering a pollster, his degree of attention is quite different from what it would be had he his wallet in his hand. Many men do not take the same trouble to avoid confusion when they are responding to sociological investigators as when they spend their cash.

■■ There remains the question of the admissibility and value of the results of the poll when offered to show that the design of plaintiff's bag has a secondary meaning among retail dealers. The investigators who conducted the poll are available to testify that a number of persons when shown plaintiff's bag did identify it as coming from plaintiff. But defendant has argued that the testimony that they are prepared to give, and the tabulations derived therefrom, are excludable under the hearsay rule.

It is, of course, clear that the testimony of the investigators as to what interviewees said is offered to show not the truth of what the interviewees said but to show their state of mind. Some authorities have, therefore, concluded that the testimony is not hearsay. United States v. 88 Cases, More or Less, 3 Cir., 187 F.2d 967; 6 Wigmore, Evidence (3rd ed.) § 1776; Note 66 Harv.L.Rev. 498, 501, 503, note 34. Others, however, have noted that the proffered evidence has some of the dangers of hearsay. See Note 66 Harv.L.Rev. 498, 501–502; Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L.Rev. 177, 185, 202–203, 206; McCormick, The Borderland of Hearsay, 39 Yale L.J. 489, 491. So long as the interviewees are not cross-examined, there is no testing of their sincerity, narrative ability, perception, and memory. There is no showing whether they were influenced by leading questions, the environment in which questions were asked, or the personality of the investigator. But where a court is persuaded that in a particular case all these risks have been minimized, that the answers given by the interviewees are, on the whole, likely to be reliable indicia of their states of mind, that the absence of cross-examination is not prejudicial, and that other ways of getting evidence on the same point are either impractical or burdensome, the testimony should be admitted. See Note 66 Harv. L.Rev. 498, 503. In this case these conditions have been met. Accordingly, the hearsay objection is overruled and the testimony of the results of the poll is admitted to show whether retail dealers recognized plaintiff as the source of plaintiff's design for suitcases.

The testimony is not only admissible but is to some degree persuasive on the issue that the plaintiff's design has acquired among dealers a secondary meaning. Of course, it is not exceptionally persuasive because there is no evidence as to what fraction of the dealer market does make that identification. Only 29 persons were asked about plaintiff's bag and those 29 not only were a small sample but were selected from a universe designed by experts inadequately informed of the problem and hence arbitrarily making exclusions and inclusions.

This then is the situation: there is some evidence that retail dealers do associate plaintiff's design for a suitcase with plaintiff, but the only evidence

that retail dealers are likely to be confused by defendant's product consists first of the very bags manufactured by the parties and second of the testimony of plaintiff's design expert. This evidence of likelihood of confusion on the part of dealers is far from persuasive. Dealers would never be misled by the general design of defendant's bag. They would look at the manufacturer's label on the bag. They would buy only after detailed talk with a manufacturer's salesman or careful inspection of a manufacturer's catalog or both. Presumably they would execute with a particular manufacturer a written contract specifying in minute detail not one but many bags, each of a particular type. Under such conditions the risks of confusion as to source of goods are so small as to be virtually non-existent. It follows that plaintiff has failed to bear its burden of proof on the unfair competition case and judgment on that count of the complaint 57–159 must be entered for defendant.

It may be helpful for this Court to make certain additional observations for guidance in future cases. In every case where the results of a poll or similar survey are offered, there arise as preliminary problems the propriety of the universe, the choice of the sample, the qualifications of the experts and investigators, the manner of interviewing, the questions asked by the investigators, and the scope of freedom of the interviewee to frame an answer in his own terms. Ordinarily if the parties have not agreed between themselves as to these matters, it would be desirable to have them discussed at a pre-trial hearing at which the Court can enter appropriate orders. An adversary party, of course, has the right to object to the form, manner, and content of questions put by interrogators to interviewees; and it would usually be more convenient and economical to have the Court rule on such objections before the poll is taken rather than at the full trial. Had this procedure been followed in the case at bar there would have been a considerable saving of money and time, and perhaps plaintiff could have filled gaps in its proof.