**HAWLEY PRODUCTS COMPANY et al.,**
Appellants,

v.

**UNITED STATES TRUNK CO., Inc.,**
et al., Appellees.

No. 5339.

United States Court of Appeals
First Circuit.

Aug. 27, 1958.

John S. O'Brien, Chicago, Ill., with whom Richard L. Johnston, Lloyd C. Root, Chicago, Ill., Herbert P. Kenway, Boston, Mass., Marzall, Johnston, Cook & Root, Chicago, Ill., and Kenway, Jenney, Witter & Hildreth, Boston, Mass., were on brief, for appellants.

Herbert B. Barlow, Providence, R. I., with whom Isador S. Levin, Fall River, Mass., was on brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

Our primary concern on this appeal is with the validity as a matter of law of the holding of the court below that the single claims of five separate patents covering designs for hand luggage or similar articles are invalid for lack of invention. The patents involved are Des. 168,709 for a portable typewriter case or similar article issued to Jean O. Reinecke and Jon W. Hauser on January 27, 1953, and assigned by them to the appellant Hawley Products Company, and Des. 177,475, Des. 178,889, Des. 179,016 and Des. 179.017 for hand luggage or similar articles issued to the appellant Sol Koffler on April 17, October 2, and the last two simultaneously on October 23, 1956.

During 1957 the owners of these patents with American Luggage Works, Inc., a Rhode Island corporation, brought three suits in the court below for infringement of all but the last of the above listed patents. In the first of these complaints brought by Hawley and American Luggage Works, Inc. (for simplicity American hereinafter), it is alleged that Hawley at all times material was engaged in manufacturing moulded fibrous shells used in the manufacture of typewriter cases and similar articles such as hand luggage which embodied the invention of the Reinecke et al. patent which it owned, and that American was engaged in purchasing those shells from Hawley and assembling them in pairs affixing the necessary hardware thereto and fitting them with attractive linings and then selling the completed product embodying the invention to retail outlets. In this complaint a count for unfair competition is coupled with the count for patent infringement.

In the other two complaints brought by American Luggage Works, Inc., and Sol Koffler it is alleged that Koffler is the president and treasurer of American and that American was and now is engaged in selling and offering for sale luggage embodying the inventions covered in the Koffler patents. There are no counts for unfair competition in these complaints.

The defendants named in all three complaints are United States Trunk Co., Inc., a Massachusetts corporation, Clarke Precision Moulding Corporation, also a Massachusetts corporation, Sydney S. Feinberg, the president, treasurer, general manager and principal stockholder of United States Trunk and the treasurer

of Clarke Precision, and Steven Feinberg, Sydney's son, and the president of Clarke Precision.

The fifth patent, Des. 179,017, issued to Koffler came into this litigation in the following way: On March 15, 1957, after a day spent in taking depositions in Providence, Rhode Island, in the suit brought by Hawley et al., counsel for the defendants produced two articles of luggage manufactured by the defendant United States Trunk and asked counsel for the plaintiffs whether in their opinion either infringed any patents owned by their clients. Counsel for the plaintiffs after inspecting the luggage replied that in their opinion both pieces of luggage infringed one or both patents Des. 179,016 and Des. 179,017, and thereupon counsel for the defendants immediately served on the plaintiffs a complaint which they had already prepared praying for a judgment declaring both patents invalid. The defendants answered the complaint in due course admitting that their counsel had stated that the luggage shown to them infringed both the 016 and 017 patents, but averred "that upon further consideration they do not assert infringement by the luggage shown" of the 017 patent. Wherefore they asserted that no actual controversy existed with respect to that patent and so far as it was concerned the suit for a declaratory judgment should be dismissed for lack of jurisdiction. By stipulation the suit for declaratory judgment was transferred by the United States District Court for the District of Rhode Island to the United States District Court for the District of Massachusetts, where it was consolidated for trial with the three other suits pending in that court mentioned above.

At the close of the evidence introduced by the plaintiffs at the trial the court below ruled that Hawley and American had failed to sustain their burden of proving their charge of unfair competition so that on that count of their complaint judgment would have to be entered for the defendants. At the same time the court on motions of the defendants dismissed Clarke Precision Moulding Corporation and Sydney and Steven Feinberg from all the cases. At the conclusion of the evidence the court found that all five of the patents involved were invalid for lack of invention over the disclosures of the prior art, saying that "the design appearances disclosed in each of these patents are plainly within the creative ability of à designer of modest skills, imagination, and originality." It found specifically that the design covered in the Reinecke et al. patent owned by Hawley was not "strikingly novel" in its "visual effect or appearance," but was "a simple, easily conceived combination of well known elements" and that "To accept in this case plaintiff's contention of validity would be to convert the standard of patentability from that of invention over the prior art to that of variation from the prior art," which, as the court quite correctly remarked, "is not permissible."

The remaining four patents were also found invalid for the reason that the designing skills revealed in them were well within the range of ordinary practitioners of the craft exercising merely the skill of their calling and hence were insufficient to meet the "Constitutional and statutory standard" for invention. From a single judgment appropriate to the foregoing findings and rulings, American Luggage Works, Inc., Hawley Products Company and Sol Koffler have taken this appeal.

We shall consider the question of the validity of all five patents first and then take up other asserted errors of the District Court.

The appellants contend that the court below fell into a variety of errors in reaching its conclusion that the patents involved are all invalid for lack of invention. They say that the court violated Title 35 U.S.C. § 282 by ignoring the presumption that patents should be presumed to be valid until their invalidity is established by the party asserting the same, that it applied too strict a test of invention in view of Title 35 U.S.C. § 103 which they assert on the

authority of Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, certiorari denied 1955, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799, was intended to put a stop to the strict application of the test for invention in vogue in recent years and restore the test to what it was when it was first announced in Hotchkiss v. Greenwood, 1850, 11 How. 248, 13 L. Ed. 683, that it erroneously viewed the designs from the vantage point of hindsight, and that even then it did not view the designs disclosed as a whole for their overall effect upon the eye but looked at the particular features of each design separately, that it failed to consider the commercial success of the designs and the tribute accorded to their excellence by the defendants' copying, and that by holding the patents invalid on the basis of the prior art before the Patent Office it erroneously undertook to substitute its judgment for that of the administrative agency expert in its field.

■ It is true that the court below did not specifically mention any of the foregoing matters. But we can hardly assume that the learned and experienced judge who presided at the trial was unaware of them or ignored them. Instead it would seem that the patents on their faces are so clearly lacking in merit that there was no need to consider anything but the obvious in them and in the immediate prior art of hand luggage to find lack of patentable invention.

■ Section 171 of Title 35 U.S.C. enacted into law on July 19, 1952, 66 Stat. 792, 805, provides:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

Clearly the import of this language is to require more than mere novelty and originality to support a patent for a design. Novelty and originality there must be, of course, but in addition the statute requires that there must also be that elusive something known as invention. Clearly the statute does not in this respect change the settled law as it stood before the statute was enacted, as to which see General Time Instruments Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853, 854, certiorari denied, 1948, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770, and cases cited. Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 6 Cir., 1955, 226 F.2d 207, 211, 212. We agree with the District Court that the patents in suit do not meet the test for invention even when liberally applied.

The Reinecke et al. patent owned by Hawley, Des. 168,709 covers a carrying case having curved surfaces on all four sides so formed as to make the widest part of the case as it stands in a vertical position fall below the center thereof but above the bottom. The appellant Hawley describing this design in its brief says:

"The form has been developed so that it is progressively larger as it goes toward the base of the case, and then becomes progressively smaller but less so, from a point intermediate the bottom and midpoint of the case. The form is *uniform all around the case*, and no matter how it is viewed there is a constant development of form down to a line of visual weight that places the balance of the case below the center of the case."

The shape disclosed may impart a "solidarity of appearance" to a suitcase and perhaps give it in overall effect "a new and striking aesthetic appeal" as the appellants Hawley and American assert. But nevertheless the fact remains that counsel for the plaintiffs conceded at the trial that every element of the design covered in Hawley's patent is disclosed in prior patents. And moreover the basic feature of the patented design, which is said to consist of tapered curved surfaces arranged to give

the carrying case or similar article greater width about a third of the way up from the bottom when the case is in a vertical position, thereby giving the case in that position the visual appearance of weight distribution below its midpoint, is clearly disclosed in Fig. 1 of Des. Patent 161,067 issued to Thomson on November 28, 1950. See also Des. 115,560 for carrying case for typewriters issued to Kruger on July 4, 1939, showing the tapered curve described in the Reinecke et al. patent applied to one side of a portable typewriter case.

Designers time out of mind have used the device of a tapered curve comparable to that disclosed in the Reinccke et al. patent to lower the actual and visual center of gravity of various objects, such for instance as vases for flowers and water pitchers, in order to give the article real and apparent stability. We do not see how, particularly in the face of the prior art mentioned above, even the slightest exercise of the faculty of invention was required to apply that old, time-honored designer's device to an article of luggage.

We turn now to the Koffler patents.

The first one, Des. 177,475 covers hand luggage or similar articles having a combination of tapered curved surfaces similar to those shown in Hawley's design patent combined with a smooth metallic band completely circumscribing the article. The patentee says in describing his patent:

"The characteristic feature of my design consists in the provision of a smooth metallic band completely circumscribing the article and providing a raised portion thereon, the band being bordered by portions of the article contrasting in color with the band, and having a bright surface as compared to bordering portions, the band thereby being adapted to stand out from the surface of the article and be thrown into sharp relief by the contrasting brightness and colors."

A prior patent issued to one Wemyss, Des. 147,825, shows a single smooth raised metallic band positioned as in Koffler but circumscribing only three sides of a suitcase and another prior patent issued to Arbib, Des. 154,229, shows two smooth raised metallic bands completely circumscribing all four surfaces of a piece of luggage in the same way as Koffler's single band. Combining the single band of Wemyss with the completely circumscribing band of Arbib certainly cannot by any stretch of the imagination be called invention.

But the appellant Koffler contends that the essence of his ornamental design lies in the brightness of his band and its contrast in color with the bordering portions of the case. The prior art patents referred to above do not indicate whether the bands covered therein are or are not "bordered by portions of the article contrasting in color with the band, and having a bright surface as compared to the bordering portions, the band thereby being adapted to stand out from the surface of the article and be thrown into sharp relief by the contrasting brightness and colors," as claimed in this Koffler patent. But whether the bands of the prior art show these features of the Koffler band or not seems to us immaterial, for even if they do not, no exercise of the faculty of invention would be involved in giving the bands shown therein brightness and contrasting color to make them conspicuous. Indeed, unless the bands are made conspicuous by color contrast and brightness they would hardly serve an ornamental purpose.

Koffler's next patent, Des. 178,889, discloses feet attached to the corners of the bottom of a piece of luggage to support it when standing in a vertical position. The feet are described in the appellants' brief as, "frusto-conical and substantially teardrop in general shape, having an unsymmetrical configuration wider at one end and tapering to a narrower portion at the other end on a longitudinal axis * * *." Actually the smooth bulbous portion of the so called teardrop is flattened on opposite sides, the side in contact with the lug-

gage and the side in contact with the floor when the case to which it is attached is set in vertical position, and the bulbous portion has a prominent long pointed tail shown extending upward over the curved portion at the four corners at the base of the article of luggage to which it is attached.

Teardrop shapes are certainly old and well known in many arts and they are frequently seen in a variety of uses today. Moreover, the general shape, though with a shorter tail portion than shown in the Koffler patent, is disclosed in a patent for a corner shield for trunks, No. 607,132 issued to Rich in 1898. In Rich's shield the teardrop shape is mounted on one of three flat plates, each plate designed to extend over one of the three flat planes of a trunk which meet at each corner of the article, and the shape is flattened only on the side in contact with the corner of the trunk as it would have to be to make it fit the corner. It is true that Koffler's shape is flattened on two opposite sides, is not mounted on one of three flat plates, and has a long pointed tail instead of being more egg-shaped as in Rich. However, Koffler's modification of Rich seems obviously within the competence of even a moderately skilled designer who wished to adapt the Rich disclosure for trunks to a suitcase having rounded instead of angular corners. And elongating the tail of the shape is a matter purely of a designer's taste. We cannot see how Koffler's teardrop shape can possibly be said to involve an exercise of the inventive faculty.

Koffler's two remaining patents, Des. 179,016 and Des. 179,017, can conveniently be considered together. Both of these patents claim two spaced parallel lines of trim or beading completely circumscribing a piece of hand luggage around its greatest perimeter, each line consisting of a narrow upstanding U-channel raised above the case with visible stitching located in the bottom of the channel to hold the trim or beading, sometimes referred to as a welt, to the case, or at least to give that appearance.

The 016 patent covers the beading on luggage of the general shape disclosed in the Hawley patent; the 017 patent covers the beading without regard to the shape of the luggage to which it is attached. This is the only difference between these patents.

Two spaced parallel lines of stitched welting having much the same appearance as that disclosed in these patents running along the top and down the ends of a piece of hand luggage are shown in a patent for a suitcase granted to Walinsky, Des. 72,392 in 1927. And two spaced parallel lines of welting completely circumscribing a piece of hand luggage around its greatest perimeter are shown in a patent for a suitcase granted to Blanke, No. 51,437, in 1917. Working a slight modification in the appearance of Walinsky's welting and applying it to a suitcase as shown in Blanke does not in our view involve even the slightest exercise of the faculty of invention. It seems to us at the most to call only for such routine skills as might be expected of any designer in the field of luggage.

In short, it is our opinion, after examining all the patents involved in this litigation against the background of the prior art, that none of the designs disclosed therein can be said to come even close to meeting the test for invention. Each of them shows only some minor variation of the prior art well within the competence "of an ordinary practitioner of the craft exercising merely the skill of his calling," to quote from the opinion of the District Court. Thus we conclude that none of the patents meet the test for invention even liberally applied. Under these circumstances resort to the statutory presumption of validity and any inferences of validity which might be drawn from commercial success and the defendants' copying cannot save the patents from the charge of lack of invention launched against them by the defendants.

■ But the appellant Koffler contends that the court below erred as a matter of law in adjudicating the valid-

ity of his patent Des. 179,017. He concedes that his counsel when taking depositions in Providence expressed their offhand view that the pieces of the defendants' luggage shown to them on that occasion infringed that patent. But he says that on further study his attorneys changed their opinion and expressed their revised view as soon as they could in their answer to the plaintiffs' complaint for a judgment declaring the patent invalid, wherein they averred that they no longer asserted infringement of that patent by the luggage shown to them in Providence. On the basis of this concession of non-infringement in their answer they assert that no case or controversy exists as to the 017 patent, so that the court lacked jurisdiction to pass on its validity, and furthermore, even if the court had jurisdiction, the circumstances of the case are such as to make exercise of jurisdiction improper. We do not agree with either contention.

■ There can be no doubt that when the defendants filed their complaint for a declaratory judgment of invalidity with respect to the 017 patent the plaintiffs were asserting that certain luggage manufactured by the defendants infringed that patent. At that time, then, a "case of actual controversy" within the meaning of the Declaratory Judgment Act, Title 28 U.S.C. § 2201, existed between them with respect to that patent. Whether the subsequent admission of non-infringement ended the controversy and ousted the court of its jurisdiction to give the relief requested poses the question discussed but left unanswered in Larson v. General Motors Corp., 2 Cir., 1943, 134 F.2d 450, 452, 453, certiorari denied, 1943, 319 U.S. 762, 63 S.Ct. 1318, 87 L.Ed. 1713. Specifically, the question is whether withdrawal of the charge of infringement of the patent rendered the question of its validity moot.

We are not aware of any case squarely in point. But in Altvater v. Freeman, 1943, 319 U.S. 359, 63 S.Ct. 1115, 87 L. Ed. 1450, the Court held that although a decision of non-infringement finally disposed of a bill and answer, it did not dispose of a counterclaim which raised the question of the validity of the patent in suit. Wherefore the Court remanded the case to the court of appeals for consideration of the question of the invalidity of the patent which the district court had passed upon, but the court of appeals had not because it thought the question moot. And the Supreme Court reached its result in spite of the statement appearing 319 U.S. on page 363, 63 S.Ct on page 1117 of its opinion that: "To hold a patent valid if it is not infringed is to decide a hypothetical case." Thus, although it might well be thought that to hold a patent invalid once it had been found not infringed would also be to decide a hypothetical case, the law since the Altvater case is settled that a court retains jurisdiction to hold a patent invalid even after it has been found not infringed.

Explanation of this apparent inconsistency perhaps lies in the fact that of the two questions of validity and infringement, "validity has the greater public importance," Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L. Ed. 1644, for it is of greater interest to the public that an invalid patent "should not remain in the art as a scarecrow," Bresnick v. United States Vitamin Corp., 2 Cir., 1943, 139 F.2d 239, 242, than that a patent has been infringed by some particular defendant. See Addressograph-Multigraph Corp. v. Cooper, 2 Cir., 1946, 156 F.2d 483, 485. But it does not follow from this interest of the public that there is no need for an actual controversy to exist over the validity of a patent to give a court jurisdiction to declare it invalid in a suit against the patentee for a declaratory judgment to that effect. While the constitutional limitation on the federal judicial power to "cases" or "controversies" is not interpreted in any narrow or technical sense so far as de-

claratory judgments are concerned, nevertheless, to give jurisdiction to enter such a judgment:

"There must be a concrete case touching the legal relations of parties having adverse legal interests, and susceptible 'of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged.' The distinction is between a case 'appropriate for judicial determination' on the one hand, and a 'difference or dispute of a hypothetical or abstract character' on the other." Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 1943, 137 F.2d 68, 70, certiorari denied, 1943, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454, citing Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 81 L.Ed. 617.

It is true that in Emerson v. National Cylinder Gas Co., 1 Cir., 1958, 251 F.2d 152, 157, this court affirmed the dismissal of a counterclaim seeking a judgment declaring certain claims of a patent invalid, certain other claims of which were at issue in the suit, the district court having found that no actual controversy existed between the parties as to the claims involved in the counterclaim. The case at bar, however, is quite different, for when the suit for a declaratory judgment was brought there certainly was an actual concrete dispute between the parties as to the validity of the single claim of Koffler's 017 patent. And that dispute was not wholly laid at rest by the assertion in the answer that by change of mind the charge of infringement had been dropped, because the 017 patent covered exactly the same welting covered in the 016 patent, which was still in litigation; the only difference between the patents being that the first numbered one covered the welting as applied to suitcases of the Hawley type whereas the later numbered one covered the welting as applied to suitcases without regard to the shape of the case to which it might be attached. Passing any question of

double patenting that might be involved, the fact remains that should the defendants change the shape of their luggage to something unlike the Hawley design but retain their welting, they could only expect a suit by Koffler et al. for infringement of the 017 patent. Since a change in shape in the highly competitive field of hand luggage is far from unlikely, the 017 patent, in spite of the assertion that its infringement was no longer charged in this litigation, hung over the defendants' heads by a hair like the sword of Damocles.

Under the circumstances the dispute between the parties over the validity of the 017 patent, even after withdrawal of the charge of infringement, was more than merely academic or hypothetical, but was real, actual, substantial and readily susceptible of immediate and definitive determination in the controversy in which the parties were engaged. We think the court below had jurisdiction over the counterclaim as far as the 017 patent was concerned and did not abuse its discretion in exercising its jurisdiction by declaring that patent invalid.

We turn now to the contention of the appellants, Hawley and American Trunk, that the District Court erred in dismissing their count for unfair competition.

■■ "The copying of an unpatented design does not in itself constitute unfair competition." General Time Instrument Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853, 854, certiorari denied, 1948, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770, and cases cited. See also Algren Watch Findings Co., Inc., v. Kalinsky, 2 Cir., 1952, 197 F.2d 69, 72. And we have held the plaintiffs' design patents invalid for lack of invention. There is no evidence or suggestion that the defendants were "palming off" their goods as those of these appellants, for the bags marketed by the defendant, United States Trunk Co., Inc., were clearly and conspicuously labeled with its name. Thus these appellants concede, as they must, that to prevail on this count of their complaint they must not only show

that the distinctive design feature of their luggage was non-functional and was copied or imitated by the defendants, both of which for present purposes may be admitted, but they must also show that their copied or imitated design feature had acquired a secondary meaning, that is that the purchasing public associated the shape of their bags with a single source whether or not the public knew the source by name, and in addition that there was likelihood that prospective purchasers would regard the defendants' goods as those manufactured by these plaintiffs-appellants. 3 Am.Law Inst., Restatement, Torts § 741; General Time Instrument Corp. v. United States Time Corp., supra. To establish the latter elements of their case for unfair competition—secondary meaning and confusion as to source—these appellants rely heavily upon evidence of a survey of the luggage market prepared and conducted for them by experts in the field of market analysis which the court below admitted for the limited purpose of showing only that appellants' design had acquired a secondary meaning so far as retail luggage dealers were concerned, but did not find the evidence persuasive for that purpose.

Both the nature and the scope of the survey are fully described in an opinion of the District Court reported in 158 F.Supp. 50, 53. It will suffice here to say only that the survey rested upon photographs shown to retail luggage dealers of the bags marketed by the plaintiffs, by the defendants, and by another manufacturer, not upon showing actual samples of the luggage itself, and that no ultimate purchasers of luggage were interviewed at all.

■ The District Court ruled that the survey, having been limited to retailers, was "inadmissible to show that in the market of ultimate consumers the plaintiff's design had acquired a secondary meaning." And "There being no other evidence that plaintiff's design had in the ultimate consumers' market an established connotation, plaintiff has not borne its burden on that aspect of its

case." Wherefore the court below found it unnecessary to decide whether the plaintiff had borne its burden of proving that ultimate consumers would be likely to be confused by the similarity of the parties' bags. Since only retail dealers were polled in making the survey, these rulings seem so obviously correct that discussion would serve no useful purpose.

■ The District Court recognized that the result of the survey had some tendency to show that a substantial number of retail dealers identified the photographic appearance of the plaintiffs' luggage with the plaintiffs as the source and hence was admissible to show that the design of their bags had acquired a secondary meaning. But the District Court rejected the survey as evidence that retailers confused the defendants' bags with those of the plaintiffs because all the persons interviewed had to go on were photographs, and it found that the photographs were not true representations of the bags for the reason that two of them entirely failed and one of them partially failed to show the manufacturer's name tags which prominently appeared in several places on the bags themselves.

The District Court found: "These distortions are fatal to the proffer of the evidence on the issue of confusion of retail dealers. For the fact that a retail dealer does not recognize an unlabeled bag is no indication that he would not recognize a labeled bag." Then the court continued:

"Furthermore, another and most significant reason why the evidence of the poll is inadmissible on the issue of confusion is that under the substantive law the issue is not whether the goods would be confused by a casual observer (trained or untrained, professional or lay,) but the issue is whether the goods would be confused by a prospective purchaser at the time he considered making the purchase. If the interviewee is not in a buying mood but is just in a friendly mood answering a pollster, his degree of

78

attention is quite different from what it would be had he his wallet in his hand. Many men do not take the same trouble to avoid confusion when they are responding to sociological investigators as when they spend their cash."

Thus, although the District Court found the evidence of the results of the survey not only admissible but to some extent persuasive to show that the plaintiffs' design had acquired a secondary meaning among dealers, it nevertheless ruled that the plaintiffs had not established their case for unfair competition because of their failure to prove confusion of goods. It said in summary of its conclusions:

"This then is the situation: there is some evidence that retail dealers do associate plaintiff's design for a suitcase with plaintiff, but the only evidence that retail dealers are likely to be confused by defendant's product consists first of the very bags manufactured by the parties and second of the testimony of plaintiff's design expert. This evidence of likelihood of confusion on the part of dealers is far from persuasive. Dealers would never be misled by the general design of defendant's bag. They would look at the manufacturer's label on the bag. They would buy only after detailed talk with the manufacturer's salesman or careful inspection of a manufacturer's catalog or both. Presumably they would execute with a particular manufacturer a written contract specifying in minute detail not one but many bags, each of a particular type. Under such conditions the risks of confusions as to source of goods are so small as to be virtually non-existent. It follows that plaintiff has failed to bear its burden of proof on the unfair competition case and judgment on that count of the complaint * * * must be entered for defendant."

Evaluation of the persuasive force of the evidence brought forward by the plaintiffs-appellants, Hawley and American, to show secondary meaning and confusion as to source so far as retail dealers are concerned, and hence to establish their charge of unfair competition in that market, is, of course, primarily for the trial court. We think it clearly evident from the quotations from the opinion of the court below that it gave full and careful consideration to the evidence adduced by these plaintiffs-appellants on that issue and that it fell into no error of law in giving that evidence little or no weight as proof of secondary meaning and confusion as to source.

In the view we take on this appeal the question of the propriety of the District Court's action at the close of the plaintiffs' evidence in dismissing Clarke Precision Moulding Corporation from the case is academic.

Judgment will be entered affirming the judgment of the District Court.