Bernard GLAGOVSKY, Plaintiff, Appellant,

v.

BOWCRAFT TRIMMING CO. et al., Defendants, Appellees.

No. 5435.

United States Court of Appeals First Circuit.

June 5, 1959.

---

Robert H. Rines, Boston, Mass., David Rines and Rines & Rines, Boston, Mass., on the brief, for appellant.

Malvin R. Mandelbaum, New York City, Phillip J. Nexon, Boston, Mass., Lewis H. Eslinger, New York City, Goulston & Storrs, Boston, Mass., and Kenyon & Kenyon, New York City, on the brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from an order denying the plaintiff's and granting the defendants' motion for summary judgment in a suit for infringement of all five claims of United States Patent No. 2,-792,656 for an "Ornamental Stud and Ornament Dangling Therefrom" issued to the plaintiff on May 21, 1957.

The first claim of Glagovsky's patent is for an "ornamental stud," generally known as a "nail head stud," which may be plain or ornamental and of any desired shape, as circular, square, diamond shaped, hemispherical, or pyramidal, having prongs attached to its periphery at right angles to its plane for penetrating the article to which the stud is to be attached and then clinched to hold the stud in place, the stud "being provided with an integrally projecting suspending fastening member from which any of a plurality of additional ornamental members may selectively be suspended to dangle freely." Claim 2 is identical with claim 1 but specifies that the integrally projecting fastening member is a ring; claim 3 specifies the fastening member to be a hook. Claim 4 is for the combination of the stud covered in claims 1, 2 and 3 with an ornament dangling from the fastening member of the stud. Claim 5 is for the combination described in claim 4 attached to "an article of wearing apparel." Although not so limited, the patented device was designed and is primarily intended for attachment to the uppers of women's shoes.

On the basis of affidavits, depositions and prior patents introduced as exhibits at the taking of the depositions, the District Court concluded that it was "unable to perceive invention" and therefore granted the defendants' motion for summary judgment and denied the plaintiff's.

The prior art and the patent claims are so simple that they can be readily understood by any normally intelligent person without the aid of expert testimony. There was, therefore, no error below in disposing of the plaintiff's suit on the motions for summary judgment and their supporting affidavits, depositions and exhibits. George P. Converse & Co. v. Polaroid Corp., 1 Cir., 1957, 242 F.2d 116, 120, and cases cited.

The defendants' infringement is freely admitted. Thus the only issue presented is whether the District Court's finding of invalidity for lack of invention can stand. We think that it certainly can.

The plaintiff-appellant invites us to reconsider our statement in Wasserman v. Burgess & Blacher Co., 1 Cir., 1954, 217 F.2d 402, 404,[1] that § 103 of the Patent Act of 1952, 35 U.S.C. § 103, quoted in material part in the margin[2] "merely

---

1. See also Hawley Products Co. v. United States Trunk Co., 1 Cir., 1958, 259 F.2d 69, 72.

2. "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the pri-

codified the existing decisional law," and now hold that the section interpreted in its setting in the Act as a whole and in the light of its legislative history was intended by Congress to lower the standard of invention and put an end to its strict application as evidence in numerous decisions handed down in recent years. We decline the invitation for we do not find this case an appropriate vehicle for the undertaking. Glagovsky's device impresses us as so lacking in invention that the claims of his patent cannot be sustained even by applying the now statutory standard as liberally and as generously to the patentee as the wording of the statute permits.

There is some question as to the "art" to which the subject matter of the patented device pertains. Does it lie in the art of wearing apparel generally, or in the shoemaking art? Or does it belong in the art of personal adornment or in the narrower art of pendant personal adornments? It has a certain affinity with objects in each of the above "arts" without fitting definitely and exclusively into any one of them. We need not classify it in a particular art, however, for viewed against the background of any pertinent art it still does not seem to us to exhibit "that elusive something known as invention." Hawley Products Co. v. United States Trunk Co., 1 Cir., 1958, 259 F.2d 69, 72.

The plaintiff does not claim a plain or ornamental nail head stud with peripheral prongs for attachment. It is conceded that such studs are old in many arts, specifically in the shoemaking art, where studs of that kind have been used for years to adorn the uppers of shoes. The heart of the plaintiff's patent is the integral ring or hook, in the usual embodiment stamped out of the same material as the stud on its periphery, from which the dangling ornament is suspended by a hook or ring attached thereto, the hook, whether it be part of the stud or part of the dangle, being bent together to provide permanent attachment of the two objects. But studs with peripheral integral rings or hooks for the attachment of dangling ornaments, either with or without peripheral prongs for attaching the stud, are not new. They have been used for years, as the plaintiff himself admitted on deposition, for ornamenting dresses, belts and the like. And prongless ornmental studs with peripheral rings from which to dangle additional ornaments have been well known in the jewelry art for a long time. See Patent No. 119,530 issued to Northup in 1871. The fact that the prongs used for attaching studs to a dress or light fabric were not made long or strong enough to pierce the leather used for the uppers of shoes is of no consequence, of course. Not only are the attaching prongs of the nail head stud no part of the patent but even if they were, it would be but routine work for a mechanic to make the prongs suitable in length, shape and strength to pierce the leather used for shoe uppers.

In the shoemaking art, however, although nail head studs with ornaments dangling therefrom had been used for years, nail head studs having a peripheral, integral ring or hook for suspending the dangling ornament were not known prior to the disclosure of Glagovsky's patent. One method of the prior art of shoemaking, according to the specification of the plaintiff's patent, was to provide the additional ornament, the dangle, with a hook or ring for its suspension and to secure it to the shoe upper by inserting one of the prongs of the ornamental stud through the hook or ring before clinching the prongs through the leather. A defect of this technique was that the suspended ornament did not dangle freely. Another prior art method was to suspend the dangle loosely from a small, thin, split, metal-wire ring, called a "split jump ring," or more sim-

or art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

ply, a "jump ring," threaded through the hook or ring of the additional ornament and then inserting a prong of the nail head stud through the jump ring before clinching. This technique allowed the ornament to dangle freely, but a disadvantage of the method was that the jump ring was likely to be damaged by being hit by a prong of the stud as it was forced through the leather with the result that the additional ornament would fall off either during manufacture or in use soon afterward. And both of these methods were difficult to practice for a certain amount of skill was required to hold the ornament or the jump ring attached to it in proper position under the stud as it was driven through the leather. Moreover operators were likely to have their fingers pinched in the process.

The plaintiff solved these problems. But he did so by adopting a device which, with only a mechanic's changes, had long been in use in the allied arts of wearing apparel other than shoes, i.e., dresses and belts, and the jewelry art. And in the art of shoemaking all he did, in effect, was to attach a solid ring, for his purposes the equivalent of the split jump ring of the prior art, to the periphery of the old nail head stud instead of inserting a prong of the stud through the ring. The plaintiff's only meaningful contribution to the art of making shoes was to add an integrally projecting ring or hook to the old nail head stud from which to suspend the old additional ornament instead of suspending the ornament by inserting one of the prongs of the stud through a ring or hook attached to the ornament or through an additional jump ring. The plaintiff's advance may well be useful and ingenious. But making full allowance for the presumption that the patent is valid and placing the burden of establishing its invalidity on the defendant, 35 U.S.C. § 282, it does not seem to us that even in the light of the plaintiff's commercial success it can be said that the plaintiff's contribution, viewed either against the background of the allied prior arts of wearing apparel and jewelry or against the background of the particular prior art of shoemaking, can be called an invention without defining that term to describe no more than the sort of advance to be expected from any ordinarily skillful mechanic conversant with any of the arts involved.

Other contentions of the plaintiff-appellant have been considered only to be rejected as too insubstantial to warrant discussion.

Judgment will be entered affirming the judgment of the District Court.