48 CCPA

**JENKINS BROS.,** Appellant,

v.

**NEWMAN HENDER & COMPANY LIMITED,** Appellee.

**Patent Appeal No. 6653.**

United States Court of Customs and Patent Appeals.

May 5, 1961.

**676**

John B. Cuningham, Pern E. Henninger, Gerald W. Griffin, Cooper, Dunham, Dearborn & Henninger, New York City (Warren W. Eginton, Cummings & Lockwood, Stamford, Conn., of counsel), for appellant.

Leon Simon, Washington, D. C. (A. A. Saffitz and Russell L. Law, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

[1] Reg. No. 32,911, issued to a predecessor May 16, 1899, renewed twice; Reg. No. 47,333, issued to a predecessor Oct. 31, 1905, renewed twice; and Reg. No. 566,488, issued Nov. 11, 1952.

SMITH, Judge.

The issue in this trademark opposition brought by appellant as opposer is whether appellee-applicant's mark as used on its goods so resembles opposer's registered marks that confusion, mistake or deception of purchasers is likely. 15 U.S.C. § 1052, 15 U.S.C.A. § 1052. The Trademark Trial and Appeal Board, in both its original decision and in its decision rendered after consideration of opposer's petition for rehearing, held that it did not. 123 U.S.P.Q. 50; 123 U.S.P.Q. 329.

Applicant's mark, which is used on cast iron valves and forged steel valves, is shown in the published original opinion of the Trademark Trial and Appeal Board, and consists of the initials NH within a diamond border. The ends of the left vertical line of the letter N and the ends of the right vertical line of the letter H each contact the contiguous lines of the diamond border.

The opposition is based on alleged likelihood of confusion, mistake or deception of purchasers because of the resemblance of applicant's mark to opposer's marks which consist of a diamond shaped geometric outline alone[1] and the name "Jenkins"[2] or the initials "JV"[3] or "JB"[4] displayed within the diamond shaped outline. Opposer's marks are used for metal valves of various kinds as well as other goods which are not here in issue.

The parties have stipulated:

1. Opposer has not used "any trademark consisting of a diamond per se" except for "a diamond shaped surface embossed upon the hand wheel of the valve concentric with the stem thereof."

2. Opposer and its predecessors have used the diamond design in association

[2] Reg. No. 22,335, issued to a predecessor on Jan. 10, 1893, renewed twice; Reg. No. 46,196, issued to a predecessor Sept. 12, 1905, renewed twice; Reg. No. 105,115, issued July 6, 1915, renewed twice; and Reg. No. 553,736, issued Jan. 22, 1952.

[3] Reg. No. 593,531, issued Aug. 10, 1954.

[4] Reg. No. 593,530, issued Aug. 10, 1954.

with the names "Jenkins" and "Jenkins Bros.," and with the initials "JB" or "JV" on valve products and on tags or labels attached thereto and to containers for the same.

3. Applicant has not used a diamond per se as a trademark.

1924 is the stipulated date of first use by opposer of the diamond per se mark. The stipulation states that the diamond design in association with the names "Jenkins" and "Jenkins Bros.," or the initials "JB" or "JV" has been used continuously by opposer and its predecessors at various periods and for various valve products since 1887.

Applicant's first use of its mark is stipulated to have been on November 16, 1923, in the United Kingdom.

The stipulation which covers applicant's proofs refers to numerous third party registrations, some of which relate to trademarks on valves and some of which relate generally to goods in the field of hardware, plumbing and steam-fitting supplies or in the field of metals, metal castings and forgings. This stipulation provides that printed copies of the trademark registrations may be received in evidence. The third party registrations which relate to trademarks on valves are, by stipulation, to be received "as proof of the claim to right to use of [sic] the trademarks shown therein on valves as of the date of first use alleged therein." The other third party registrations may, by stipulation, be "received in evidence as proof of a claim of right to use in commerce in the field of Hardware, Plumbing and Steam-fitting Supplies, or in the field of Metals, Metal Castings and Forgings, trademarks consisting in part of a diamond configuration."

The parties agree that sales by opposer of valves under its marks in 1956 were in excess of $19,000,000, and that from 1928 through 1956 expenditures of over $4,500,000 were made by opposer in advertising its valves in periodicals directed to the industrial field, and in which a concerted effort was made by opposer to establish the diamond as the dominant feature of its mark.

To support its position as to the likelihood of confusion, mistake or deception of purchasers, opposer conducted what is characterized in the stipulation as to opposer's proof dated November 26, 1958, as a "sampling of spontaneous reaction of the trade * * * for the purpose of establishing that its intensive use and advertising of the diamond trademark has caused that mark to acquire and still retain its identifying significance in connection with standard types of valves made and sold by opposer in competition with other manufacturers of such products."

The reports of the interviews are, by stipulation, to be considered as the testimony of witnesses. Paragraph 12 of said stipulation provides "that each of the interviewees would testify, respectively, as set forth in the particular report of his reaction to the interview, and that said reports may be used herein with the same force and effect as if said individual interviewers and interviewees had duly testified in words and substance as set forth therein." Thus there is no issue presented here as to poll type surveys.

The stipulation also sets forth the method of selecting the persons to be interviewed as follows:

"The persons interviewed on said samplings were selected at random from the current classified section of the telephone directory in each of the cities where the interviews took place under 'Valves' or 'Plumbing fixtures and supplies' or similar classifications, and were further selected solely to suit the convenience of the interviewers with the single exception that no established dealer or distributor who regularly sold Jenkins valves was interviewed."

Much of the testimony is not relevant to the present issue. The only testimony directly pertinent to the present issue is that directed to the interviews conducted by opposer's Canadian affiliate in which

persons in various cities in Canada were interviewed in connection with a valve of applicant's manufacture which had been sold in Canada and on which applicant's mark appears. This is the so-called "NH in Diamond Survey." The testimony relating to the "samplings" in the United States and Canada on the other valves is not relevant to the single issue here which involves the likelihood of purchaser confusion, mistake or deception arising from applicant's use of its mark on its valves.

In resolving this issue we shall first consider the statements of the interviewees in the relevant interviews and then we shall consider the third party registrations as evidence to the extent agreed in the stipulation of the parties.

The statements of the interviewees in the so-called "NH in Diamond Survey," in Canada were given after one of applicant's valves bearing its trademark as shown in the application was exhibited to these interviewees, who were asked the question, "Can you tell me who makes this valve?"

▪ ■ All of the persons interviewed in this survey were connected in one way or another with plant supervision, operation or maintenance. There is no showing that any of those interviewed were purchasers or prospective purchasers of such valves. This type of testimony must, therefore, be carefully evaluated for, as stated by Judge Wyzanski in American Luggage Works, Inc. v. United States Trunk Co., Inc., D.C.Mass.1957, 158 F.Supp. 50, 53,

"* * * under the substantive law the issue is not whether the goods would be confused by a casual observer, (trained or untrained, professional or lay), but the issue is whether the goods would be confused by a prospective purchaser at the time he considered making the purchase. If the interviewee is not in a buying mood but is just in a friendly mood answering a pollster, his degree of attention is quite different from what it would be had he his wallet in his hand. Many men do not take the same trouble to avoid confusion when they are responding to sociological investigators as when they spend their cash."

Another difficulty in evaluating the statements of the interviewees is that these statements do not show the extent to which the answers were motivated by the appearance of the valve itself rather than the trademark appearing thereon. Thus, when asked: "Who makes this valve?", Bettemore, whose interview is reported in Exhibit M–8, replied, "Well, now you have me puzzled. I can't say who makes it but it looks like the Jenkins valve that we use."

McBryde, whose interview is reported in Exhibit M–13 answered the same question, "It could be a Jenkins, I don't know."

Opposer's marks appear to be so well known to some of the persons interviewed that the presence of the initials NH in applicant's mark on its valve led to such replies as the following:

Greaves, whose interview is reported in Exhibit M–2 said:

"It is not a Jenkins or a Crane because of the N.H. but it would be a Jenkins if it were only a plain diamond."

Felmate, whose interview is reported in Exhibit M–3 said:

"I'm not sure. It would be a Jenkins if it wasn't for the N.H. But, like that, it could be anything."

Sinel in Exhibit M–16 said:

"I don't know the signification of the N.H. The only valves I know are Jenkins."

Carwin in Exhibit M–56 said:

"The NH doesn't mean anything to me. This diamond is like a Jenkins—I have nothing but Jenkins and a few Cranes in the plant here. If it were anything, the name would be written inside the diamond."

The two witnesses whose replies are heavily relied upon by opposer as establishing the likelihood of confusion, and

who identified applicant's valve as a "Jenkins," were Mullan, a Boiler Room Engineer, who identified the valve shown him as "It's a Jenkins valve—We use Jenkins all the time * * *" (Exhibit M–76), and McGill, Chief Engineer of the Gypsum Lime & Alabastine of Canada, Ltd., who said: "Yes, it's a Jenkins." (Exhibit M–77.)

In considering these answers it would appear that the identification of the valves as a "Jenkins" may have been influenced by the fact the factory in which Mullan was employed used "Jenkins" valves "all the time," while in McGill's case, 90% of the valves used by his employer were "Jenkins" valves.

That contact with particular valves may have had considerable significance in the attempted identification of the valve shown to the witnesses is borne out by the numerous witnesses who definitely identified the valve as "not a Jenkins" (Exhibits M–18, M–19, M–32) as well as by the witnesses who identified the valve as a "Nordstrum" (Exhibit M–14), a "Honey Well" [sic] (Exhibit M–15), "Might be a Penberthy" (Exhibit M–20), a "New Haven" (Exhibit M–21, M–44), a "Saunders valve made by Grinnell" (Exhibit M–22), "It has some Crane features and it looks like an old Frick" (Exhibit M–26), "an American valve, probably New Hartford" (Exhibit M–31), "Might be an International Harvester" (Exhibit M–59), "It might be a Henry" (Exhibit M–71), "It's either a Crane, Lunkenheimer or Jenkins" (Exhibit M–73).

Under these circumstances, we regard the evidence of confusion as established by the testimony of the interviewees as being so inconclusive as not to be persuasive on the issue before us.

We now turn to the third party registrations of record. These registrations show numerous claims of rights to use a diamond border or outline in trademarks for valves as well as for goods in related fields. These registrations show that a diamond border or outline per se has little significance as an indicator of the source or origin of the goods on which it appears. As a matter of fact, the interviews above referred to make it clear that a diamond per se is not an indicator of source or origin of the valves on which it is applied.

Thus, when shown applicant's valve on which the NH and diamond design mark was used, certain of the interviewees answered the key question "Who makes this valve?" in the following manner:

"Schram: I really couldn't say. It wouldn't be a Jenkins because of the N.H. in the middle of the diamond, and in the same way, it wouldn't be a Crane or anyone I know." (Exhibit M–5)

"Bishop: I don't know who makes it. It might be a Penberthy on account of the diamond but they have an 'F' in the middle of the diamond and not N.H." (Exhibit M–20)

"Painter: This is not a Minneapolis Honey Well [sic] because it would be 'M.H.' and not 'N.H.' It wouldn't be a Nordstrum because they write the whole name in the diamond. I don't know this one." (Exhibit M–28)

Several of the interviewees associated the diamond with opposer but these parties were not confused as to the source or origin of applicant's valve because of the initials "N.H." in applicant's mark on the valve. (Exhibits M–2, M–3, M–6, M–7, M–9, M–11, M–19, M–23, M–29, M–30, M–38, M–56, M–57.

Several of the witnesses reported that the diamond didn't tell anything as to who makes the valve. (Exhibits M–21, M–22, M–24, M–59, M–62.)

Thus, the conclusion which seems to us to be fully justified on the present record is that there is such a common usage of diamond designs in trademarks for valves that the diamond design per se has little if any significance as an indicator of source or origin of the goods on which it appears.

When we compare applicant's mark with the marks of opposer, we find op-

poser's marks include either a plain diamond embossed on the hand wheel of a valve, or a diamond with the names "Jenkins," or "Jenkins Bros." or the initials "JV" or "JB" shown inside the diamond on the body of the valve. We cannot regard applicant's and opposer's marks as confusingly similar unless we assume opposer's marks collectively give it rights of exclusion with respect to all diamond shaped borders on valves with initials and names therein. We do not think such conclusion is warranted in view of the many instances in which both names and initials are shown in diamond shaped borders in the third party registrations of record both for valves and for goods in related fields.

We find no such resemblance between the NH in the diamond of applicant's mark and the names and initials in opposer's mark as would be likely to cause confusion, mistake or deception of purchasers as to the source or origin of applicant's valve when so marked.

Opposer has asserted that it has protested many of the attempts by others to register marks similar to some of those shown in the third party registrations and has "obtained acquiescence satisfactory to it." We do not consider this to be persuasive evidence here. We do not know the terms on which such "acquiescence" was obtained. We have no indication that any of the prior registrations were cancelled. As the record stands before us, opposer's marks have significance as indicating source or origin of its goods only when a plain diamond is embossed on the hand wheel of a valve or a diamond with the names "Jenkins," or "Jenkins Bros." or the initials "JV" or "JB" are used as a composite mark on the valves. Applicant's mark has not been shown to be likely to cause confusion, mistake or deception of purchasers as to the source or origin of valves on which it is used.

We therefore *affirm* the decision of the Trademark Trial and Appeal Board.

Affirmed.