**PROCTOR ELECTRIC CO.**

v.

**SUNBEAM CORP.**

**No. 50 C 157.**

United States District Court, N. D. Illinois, E. D.

June 4, 1954.

**412**

Brown, Jackson, Boettcher, & Dienner, Chicago, Ill., for plaintiff.

Ira J. Wilson, John F. McCanna and Walther E. Wyss, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The Proctor Electric Company seeks injunctive relief and damages for an alleged infringement of Claims 6, 7, and 8 of Patent No. 2,301,070, originally issued to Joseph W. Myers. The patent relates to an electric bread toaster in which bread slices are automatically discharged when they are toasted to the desired degree, and the three specific claims cover the electrical device which controls the automatic discharge of the toast. This device, defined in simplest terms, is a combination of a "bread-sensitive" thermostat—one that is governed by the heat of the toast itself—and a connecting heat-responsive wire element, which, when rapidly cooled, will activate a spring which ejects the toast. It is charged that the Sunbeam Corporation infringed the Myers patent by employing that electrical device in the Sunbeam Model T–20 toaster.

The device covered by the three claims is used by the Proctor Electric Company in a common two-well toaster. A slice of bread may be inserted into each well, upon a carriage which slides vertically within the well. The carriage is manually operated, and, when lowered to the bottom of the well, the toasting operation begins. The actual toasting is effected by electric heating elements which line the sides of the well. These elements are arranged in an electrical circuit in series, with two separate switches. The first remains open when the toaster is not operated, and is closed when the carriage is manually lowered at the beginning of the toasting operation. The second switch is governed by the bread-sensitive thermostat, and remains closed until the thermostat is deflected by the heat of the bread. When the second switch is opened by the thermostat, the current throughout the toaster is interrupted, and a "hot" wire element cools rapidly. The rapidly contracting wire element trips a latch, which in turn releases a spring, and the bread carriage rises. The toasting operation thus concludes with the automatic discharge of the toast.

Bread-sensitive thermostats were patented long before the issuance of the patent in suit. In 1934, eight years before Myers presented his claims, Patent No. 1,957,343 was issued to Hurxthal and Biddinger, who incorporated a bread-sensitive thermostat into a toaster. Indeed, Hurxthal had obtained a similar patent in 1925, seventeen years before the issuance of the Myers patent. Hurxthal's first patent, No. 1,540,628, also related to a bread toaster, and specifically claimed "a sensitive element located in such relation to the surface of the bread to be toasted that it will be affected by the surface temperature of the bread and will stop the toasting of the bread when a given temperature is reached." A similar device is embraced by Patent No. 2,099,210, issued in 1937 to one Murray Ireland, who stated: "An object of my invention is to provide an electric toaster having novel means for controlling the length of time of a toasting period jointly in accordance with the moisture content of a slice of bread to be toasted and with the temperature of the toaster." These are but three of the many patents which reveal that Myers' thermostat was not new to the industry.

It is true that Myers' patented thermostat, unlike the earlier inventions of Hurxthal and Ireland, was used profitably and extensively; but that does not lessen the effect of the earlier inventions upon the validity of Myers' patent. The sum of all authority for this point has best been expressed by Judge Learned Hand, speaking in Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 1945, 147 F.2d 345, 350:

> "A patent may have lain for years unheeded, as little a contribution to the sum of knowledge as though it had never existed, an idle gesture long since drifted into oblivion. Nevertheless, it will be as effective to invalidate a new patent, as though it had entered into the very life blood of the industry. * * * Perhaps this should not be so; perhaps there should be some equivalent of a 'lost art,' which would put even prior patents in Limbo, when they have really gone to the place of departed spirits. That is another question: it is not for courts."

When Judge Hand's majestic language is applied to the art of toasting bread, it is clear that Myers' conception of a bread-sensitive thermostat, absent supplementary electric devices, does not qualify as a valid, protectible patent.

The Proctor Electric Company admits that bread-sensitive thermostats were used in the industry long before 1942, when Myers obtained his patent. Even so, it submits, the thermostat could not be used practicably in an automatic toaster until Myers prescribed its use with a heat-responsive wire, one which could transmit the movement of the thermostat to the spring which pushes the bread carriage. This combination of the thermostat and the heat-responsive or "Hot" wire was new to the industry, and it is relied upon in this suit to distinguish the Myers patent from all others.

It is clear that Myers' heat-responsive wire had long been used in electric appliances of various types. Indeed, the exhibits introduced at the trial show that similar heat-responsive elements have been patented time and again, at least since 1880. Two such patents, covering electric switches, are No. 1,046,499, issued to Schneider in 1912, and No. 1,925,360, issued to Altemiller in 1933; and it should be noted that Altemiller's patent recites that his device "may be employed for many uses." In view of the variety of patents covering similar heat-responsive elements, it cannot be said that Myers' "hot" wire, considered alone, reached patentable status.

The Myers patent therefore embraces nothing more than a new combination of two well-known devices—bread-sensitive thermostat and heat-responsive wire. It is urged that the two, considered together, present one integrated and patentable device; but this would be true only if the combination produced a new, unanticipated function. F. C. Russell Co. v. Comfort Equipment Corp., 7 Cir., 1952, 194 F.2d 592. That was not the case here, for each of the two elements claimed by Myers performed precisely the same function outlined in prior patents, and neither of the two elements modified the other. As Mr. Justice Jackson remarked when speaking of another aggregation of old elements in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162. "Two and two have been added together, and still they make only four." The distaste for such combinations first expressed in Lincoln Engineering Co. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, was then restated by Mr. Justice Jackson in these terms:

> "The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective func-

tions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

The policy is clear; and it dictates that the court may not sustain a patent which does nothing more than combine two well-known elements. The Myers patent is clearly invalid.

In accordance with the views herein expressed, the court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Proctor Electric Company, plaintiff herein, is a corporation of the Commonwealth of Pennsylvania; Sunbeam Corporation, defendant herein, is a corporation of the State of Illinois.

2. This suit arises under the patent laws of the United States.

3. Plaintiff is the owner of Patent No. 2,301,070, issued to Joseph W. Myers on November 3, 1942.

4. Claims 6, 7, and 8 of said patent embrace the use of a bread-sensitive thermostat in combination with a heat-responsive wire element in an automatic bread toaster.

5. Bread-sensitive thermostats are defined in at least four patents, each issued prior to the date of the Myers patent.

6. Heat-responsive wire elements had been patented long before the issuance of the Myers patent.

7. The combination of a bread-sensitive thermostat and a heat-responsive wire-element, as taught in Claims 6, 7, and 8 of the Myers patent constitutes the addition of two elements well-known in the toaster industry, and prescribes no change in the respective functions of either of the two elements.

### Conclusions of Law

1. Claims 6, 7, and 8 of the Myers patent show no invention over the prior art.

2. Claims 6, 7, and 8 of the Myers patent are invalid.

### Judgment

It is hereby ordered, adjudged and decreed that Claims 6, 7, and 8 of Patent No. 2,301,070, issued to Joseph W. Myers on November 3, 1942 are invalid. Accordingly, judgment is entered for defendant and the complaint is dismissed. Attorney's fees and certain injunctive relief sought in the counterclaim shall not be granted, and the counterclaim is dismissed.