ALCO KAR KURB, INC., Plaintiff,

v.

Victor L. AGER, d/b/a Totowa Concrete Block Company and Two Guys From Harrison, Totowa, Inc., Defendants.

Civ. A. No. 265–59.

United States District Court
D. New Jersey.

Feb. 23, 1960.

98

Jacob and A. A. Levinson, Perth Amboy, N. J., Caesar & Rivise, Philadelphia, Pa., by Arthur A. Jacobs, Philadelphia, Pa., of counsel, for plaintiff.

Guy G. Gabrielson, Jr., Moses, Nolte & Nolte, New York City, by Albert C. Nolte, Jr., New York City, Samuel J. Snyder, Long Island City, N. Y., of counsel, for defendant Ager.

WORTENDYKE, District Judge.

In this patent infringement action, the validity of United States Patent No. 2,794,375 issued to Dominick and Peter DiFalco on June 4, 1957, upon application filed October 12, 1954, is placed in issue by the defendant Victor L. Ager, trading as Totowa Concrete Block Company, by way of motion for summary judgment, pursuant to F.R.Civ.P. 56, 28 U.S.C. Plaintiff, a corporation of the State of Pennsylvania, is an assignee of the patent by assignment dated January 28, 1958. Defendant Ager asserts invalidity of the patent not only in the answer to the complaint for infringement, but by way of counterclaim for a declaratory judgment of non-infringement and invalidity. It was represented to the Court at the pretrial conference that the co-defendant Two Guys from Harrison, Totowa, Inc., had filed no answer (nor has any answer as yet been filed in its behalf), and that subject to the outcome of the conference, there might be a dismissal of the action as to said defendant (Two Guys). The Court has not been advised respecting the present status of Two Guys in the cause, and said defendant has neither joined in the present motion nor independently moved for summary judgment.

The title of the patent in suit appears at the head of its specifications as "Sectional Curb for Parking Lots and the Like." The object of the invention as stated therein "is to provide a novel bumper or curbing unit which can be easily and inexpensively prefabricated from concrete or the like, and which can be quickly assembled into a strong and durable continuous border or divider for an automobile parking lot, or like enclosure, capable of acting as an effective barrier or stop and, at the same time, providing adequate drainage for the enclosure." As amplified in the first three of the five claims of the patent, the description of the patented device is as follows:

"1. A sectional curb for a parking lot or the like comprising a plurality of bumper units each prefabricated of concrete or the like, each bumper unit being constructed and arranged to be mounted entirely above ground and being elongated and of generally rectangular cross-sectional configuration with a horizontal top wall and vertical front and back walls and end walls, the bottom of each bumper unit having a pair of ground-contacting supporting piers at its ends and having a ground-contacting center supporting pier and having a pair of drainage arches extending longitudinally intermediate the center pier and the respective end piers and extending upward substantially above the ground, each bumper unit having an anchorage hole extending vertically therethrough generally at the center of each supporting pier, said

bumper units being assembled in abutting end-to-end relationship and elongated anchorage elements disposed in non-protruding relationship within the vertical holes and driven into the ground a distance somewhat greater than the height of the units, the arches providing a series of spaced openings permitting surface water to drain from the lot surface through the curb, said anchorage elements being vertically generally uniform throughout, whereby individual bumper units can be removed and replaced by vertical raising and lowering without the need for disturbing adjoining bumper units or for removing the anchorage elements.

"2. A construction according to claim 1 wherein each bumper unit has a vertical tongue formed on one end wall and a corresponding vertical groove formed on the other end wall, the tongue of each unit fitting with the groove of the next adjoining unit to maintain the units in properly aligned relationship, said tongue and groove elements being vertically uniform throughout.

"3. A construction according to claim 2 wherein a generally cubical corner unit is provided to connect two of the bumper units in generally rectangular relationship, said corner unit having a vertical tongue which is vertically generally uniform throughout formed on one of its vertical walls and having a corresponding groove formed on an adjoining vertical wall to connect with the corresponding elements of the adjoining bumper units, said corner unit also having a hole extending vertically therethrough with an elongated vertically uniform anchorage element disposed in non-protruding relationship within the hole and driven into the ground a distance somewhat greater than the height of the corner unit."

More succinctly described, the basic element is a precast concrete beam, longer than its height or width, the bottom side of which is formed with two longitudinal arches or concavities therein which are separated by a center, and two end, piers on which the beam rests upon the surface of the pavement or ground of the parking lot or similar area. The arches provide means for drainage from the surface of the area to be bounded or enclosed by a line or lines of such units. Each unit is also provided with vertical holes through the end and center piers, which permit the insertion therethrough of headless pins or pipes which may be driven into the ground to secure the unit against lateral movement caused by bumping of automobile wheels against it. The bore of these holes is sufficiently larger than the diameter of these pins to permit vertical removal of the beam without disturbance of the pins. For assembly of a line or succession of these units, each block is provided with alternating vertical tongue-and-groove end construction to ensure proper alignment, to add greater rigidity to the finished assembly, and to permit of vertical removal of the beam without disturbing its adjoining units. The third claim provides for the joining of two courses of blocks at right angles to each other by means of a cubical corner unit having a tongue on one side and a groove on the adjoining side, for insertion where needed to effect an enclosure. This corner block is also formed with a hole for the reception of a pin for purposes of similar anchorage and removability as in the case of the beams.

Plaintiff asserts that the principal element of novelty in the patented device is to be found in the readiness with which one or more of the individual sections of the curbing may be removed and replaced without disturbing the position of either of the adjoining sections, and without the use of any tools or excessive effort. Except for the hollowed or arched areas on the bottom surface of each of the units and the use of headless pipes or pins to serve as means of anchorage to the ground and of preventing the lateral displacement of the unit, each beam

**100**

is in all respects similar, functionally, to a wooden timber spiked to a floor or ground surface to prevent the rolling of a wheeled vehicle. The end-to-end connection between the individual units is essentially similar to a succession of precast parapet copestones provided with similar tongue-and-groove means of interconnection.

The answer of the defendant Ager affirmatively pleads anticipation of the device described in the patent in suit by numerous United States and British patents, as well as by certain printed publications.

■■■ Upon a motion for summary judgment the Court must preliminarily determine whether any material issues of fact are presented, and if such an issue of fact is presented by the affidavits submitted upon the motion, that issue may not be resolved by the Court. However, if such a factual issue is not necessary to the decision of the motion, because of the existence of other uncontradicted evidence sufficing to support such a decision, the issue is not material and the motion may be decided without regard to such issuable facts. If, therefore, the prior art as disclosed in the patents relied upon by the defendant anticipates the claimed invention described in the patent in suit, reliance may be placed upon such prior art patents in disposing of a motion for summary judgment. Glagovsky v. Bowcraft Trimming Co., 1 Cir., 1959, 267 F.2d 479; George P. Converse & Co. v. Polaroid Corp., 1 Cir., 1957, 242 F.2d 116; Vermont Structural Slate Company, Inc. v. Tatko Brothers Slate Company, Inc., 2 Cir., 1956, 233 F.2d 9, certiorari denied 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123.

■■ The presumption of validity of a patent which arises by virtue of its issuance by the Patent Office is created by the statute, 35 U.S.C.A. § 282, which places the burden of establishing invalidity of a patent upon the party asserting such invalidity. Plaintiff, properly, not only relies upon this presumption, but asserts that it has been enhanced by the decision of the Board of Patent Appeals reversing the decision of the Examiner who had rejected certain of the patent claims. A copy of that appellate decision has been furnished to the Court in the form of an attachment to a copy of the patent in suit, and in that appellate opinion some of the prior art patents here relied upon by the defendant are discussed by the Board. The Examiner's rejection of claim then, and now, numbered 1 was predicated upon his interpretation of the disclosures in United States Patent No. 511,870, issued January 2, 1894 to Winter, United States Patent No. 2,034,028, issued March 17, 1936 to Eliot, British Patent No. 363,086, issued December 17, 1931 to Norman, and British Patent No. 609,905, issued October 8, 1948 to McDermott. Referenced in the patent, in addition to those listed above, are United States Patent No. 352,146, issued November 9, 1886 to Oungst, and British Patent No. 478,-419 issued January 18, 1938 to Hughes. But, in addition to these cited references, defendant has referred the Court to the following: United States Reissue Patent No. 16,689, reissued July 26, 1927 to Ford and others, United States Patent No. 390,322, issued October 2, 1888 to Weber, United States Patent No. 557,030, issued March 24, 1896 to Schaefer, United States Patent No. 1,166,664, issued January 4, 1916 to Dargento, United States Patent No. 1,414,593, issued May 2, 1922 to Sklenka, United States Patent No. 1,851,710, issued March 29, 1932 to Lefevre, United States Patent No. 2,655,-225, issued October 13, 1953 to Harris, and United States Patent No. 2,725,958, issued December 6, 1955 to Porter.

Of the cited and referenced prior art patents, in my opinion, the device described in that of Harris (No. 2,655,225) entitled "Vehicle Barrier" issued October 13, 1953 upon an application filed August 4, 1949, appears to resemble that described in the patent in suit more closely than the other prior art upon which the defendant relies.

■■■ The statute, 35 U.S.C.A. § 103, renders unpatentable devices whose differences from the prior art are such that

the subject matter as a whole would have been obvious, at the time the invention was made, to a person having ordinary skill in the art to which the subject matter pertains. Invention does not consist in the mere conception of applying an old device to a new use if the new use is so analogous to the old that the thought of adopting the device and applying it to the new use would occur to one skilled in the art who might be seeking to devise means to perform the desired function. Even though some changes or modifications are necessary to the practical application of the device to the new use, the conception of such application may still not constitute invention. Atlantic Works v. Brady, 1882, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Concrete Appliances Co. v. Gomery, 1925, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222; B. & M. Corp. v. Koolvent Aluminum Awning Corp., 7 Cir., 1958, 257 F.2d 264. Inventions, to be patentable, must consist of a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C.A. § 101. Not every new and useful improvement in an art is patentable. The improvement, to be patentable, requires the application of more ingenuity and skill than that of an ordinary mechanic acquainted with the business. Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 1945, 152 F.2d 895; Cuno Engineering Corporation v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Churchill Meat Co. v. Brodsky, D.C.N.J.1958, 160 F.Supp. 241, affirmed 3 Cir., 262 F.2d 77.

In appraising the validity of a patent in the light of prior art patents, invalidity may be found if the asserted anticipatory patents are of an art analogous to that of the patent in suit. Whether art or uses are analogous depends upon the similarity of their elements and purposes. If the elements and purposes of one art are related and similar to those in another art, and, because and by reason of that relationship and similarity, make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, the two arts are analogous.

The patent in suit discloses a combination device consisting of an aggregation of old elements. Whether the device involves invention depends upon whether its elements were previously used in combination to effect the same functionol purposes. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation from that theretofore performed or produced by them, is not patentable invention. See Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971, certiorari denied 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657, rehearing denied 344 U.S. 882, 73 S. Ct. 174, 97 L.Ed. 683; Huntman Stabilizer Corporation v. General Motors Corp., 3 Cir., 1944, 144 F.2d 963, certiorari denied 1944, 323 U.S. 782, 65 S.Ct. 271, 89 L.Ed. 624; Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 1942, 128 F.2d 380; Mojonnier Bros. Co. v. Tolan Machinery Co., Inc., 3 Cir., 1956, 230 F.2d 850; Ludlow Manufacturing & Sales Co. v. Dolphin Jute Mills, D.C.N.J.1943, 50 F.Supp. 395, affirmed 3 Cir., 145 F.2d 471.

The use of a barrier consisting of a beam of wood, steel or concrete laid upon a ground or floor or across the tops of car rails, to stop the rolling of a wheeled vehicle beyond and in a direction at right angles to the long dimension of the beam, is older that the automobile. The anchorage of such a back-stop or bumper by means of pins driven through or behind the beam into the floor or ground, or by means of clamps to the rails upon which the beam rests, is equally old. The end-to-end linear arrangement of several of such beams to accommodate several vehicles abreast is also lacking in novelty. The connection of each of such a linear

succession of beams by tongue-and-groove conformations of the adjacent ends of each pair of beams is not only not claimed to be invention, but permits a vertical removal of any unit without disturbing the adjacent units, a common and long known means of accomplishing that result. Such removability is not impaired where the resistance against lateral displacement of the beam is afforded by pins driven into the ground surface along the side of the beam opposite to that into which it is intended that the wheels of the vehicle shall come into contact. Use of headed pins driven through the beam for anchorage would prevent ready vertical removal of the beam, but use of headless pins pre-driven into the ground or floor, over which a beam with pre-drilled holes at locations opposite the tops of the pins might be lowered or lifted, is an alternative expedient which would be obvious to the mind of anyone mechanically inclined.

The decision of the Board of Patent Appeals in this case states that the Examiner rejected five of the claims "as unpatentable over Norman (Br.) in view of McDermott (Br.) and Eliot or Winter," since "the Norman structure could be used to leave arch structure for drainage in view of the drainage provisions taught in Winter or Eliot," and the provision of headless anchor pins permitting removal of the block unit involved "ordinary choice rather than invention." The Board found "no relationship between anchoring pins and pier constructions in McDermott to suggest the addition of such pins at those points in the Norman construction" nor any "reason for omitting the (pin) heads and providing a flush type of loose anchorage for the Norman structure when applying the teachings of McDermott thereto." Nothing appeared in Winter or Eliot, in the Board's opinion, "to suggest the deepening of such arches to extend above ground or the formation of openings in a prefabricated bumper element." The Board concluded that "the combination of the prefabricated units as used on a parking surface with the means of anchorage thereto which permitted their ready removal therefrom constituted patentable invention." There is nothing before me, however, to indicate whether the Examiner or the Board considered Porter, et al., Patent No. 2,725,958, issued on application filed March 16, 1953, or Harris, Patent No. 2,655,225, issued on application filed August 4, 1949, which are principally relied upon by defendant in support of his contention that the patent here in suit is invalid.

As defendant correctly states, the Porter Patent, No. 2,725,958, issued upon an application filed more than a year and a half before that of the patent in suit, disclosed a parking lot bumper block prefabricated of masonry with perinserted metal tubes extending vertically through the beam, through which spikes are driven into the ground or pavement of the parking lot to provide anchorage for the beams against lateral displacement. These headed spikes performed a function similar to that of the headless pins in the patent in suit. Indeed, the heads of the spikes in Porter also tend to prevent the beam from riding up on the spikes when the beam is struck by vehicle wheels. At the same time, of course, the heads of the Porter spikes prevent the ready removal of an individual section of beam without the use of tools or without disturbance of adjoining units. Had Porter desired to render his bumper blocks or curbs readily removable vertically, he could have provided for insertion into the holes through the blocks headless rather than headed pins. It is this Court's opinion that this would merely constitute a matter of choice and that it would readily occur to the most inexperienced mechanic either to cut the heads off the spikes, or to use pins without heads, if his object were to render the anchored block readily removable vertically. I can find no novelty in the use of headless pins in the DiFalco patent.

At the pretrial conference in this case plaintiff's attorney asserted that the novelty of the alleged invention claimed

in the patent in suit was the readiness by which one or more of the precast concrete curb sections could be removed without disturbing the position of the adjoining section or sections. Upon his oral argument on the motion for summary judgment, the same attorney conceded that the patented device embodied a combination of old elements, which included the pins or pipes employed for anchorage purposes. He also conceded that the absence of heads upon the anchoring pins or pipes permitted the lifting of an individual unit from its anchored position without disturbing the immediately adjacent units, and that use of such headless pins or pipes for such purpose was not new. It is the novelty of the combination rather than that of any of its elements upon which the plaintiff relies to support the validity of the patent. Emphasis is also placed by the plaintiff upon the precast construction of the device as a feature permitting its ready removal from position, and upon its concrete composition which prevents rust or deterioration from the elements. Plaintiff's attorney stated on the argument: "[W]hat I believe is the essence of the novelty of this invention is the fact that you do have a preformed sectional curbing wherein the individual members can be removed separately without disturbing the remainder of the members." With respect to the arched undersurface of the concrete curbing units described in the patent, plaintiff asserts that their primary purpose is drainage, i. e., to let water falling or collecting on one side of the line of units to flow beneath the units, thereby overcoming any damming effect which a solid unit would create. Counsel further stated during the argument "[w]e claim no part of the invention of a barrier, but our invention is more limited than that. Our invention resides in the particular type or construction of the barrier. Our particular construction resides in these removable sections." With respect to the employment of a tongue-and-groove conformation for the joinder of two sections of the described curbing,

plaintiff conceded that such feature involved no novelty. Thus, the features relied upon by plaintiff are reduced to the employment of anchoring pins without heads, and arching of the bottom surface of the curbing units for drainage purposes and to afford hand-holds for their ready removal.

With respect to the arched contour of the undersurface of the individual beam described in the patent in suit I find no novelty therein either in its surface drainage utility or as a hand-hold for use in vertically removing the unit from the line. The employment of arches, holes or tubes in a solid barrier placed across the course of a fluid flow to permit it to pass through or beneath, rather than over, the obstruction is as old as a stone bridge across a stream, "weep-holes" in an earth-retaining wall or flowage tunnels beneath a power dam. More relevantly, however, the Harris Patent, No. 2,655,225, issued upon an application filed August 4, 1949, disclosed a barrier adapted to provide stopping means to prevent the forward movement of automobiles when being driven into parking lots, in which the blocking member is supported *above* the ground "thereby permitting drainage in wet weather and providing space between the (member and the) * * * ground to permit cleaning therebeneath." Claim number 1 of the patent in suit describes the arches in the bottom surface of the bumper units as providing a series of spaced openings permitting surface water to drain from the parking lot surface through the curb.

Although the alleged invention in plaintiff's device may not have been identically disclosed or described in the prior art cited against it, I believe the differences between it and that prior art are such that the subject matter as a whole would have been obvious at the time the invention was made, to a person having ordinary skill in the art to which it pertains; that each of the elements in the combination in suit is old; and that their combination in the described device creates no different consequences

from the aggregation of those of each of the constituent elements. In other words, plaintiff's device is at best a mere advance in efficiency and utility which cannot suffice to convert a non-inventive aggregation into a patentable combination. 35 U.S.C.A. § 103. General Electric Co. v. Jewel Incandescent Lamp Co., D.C.N.J.1942, 47 F.Supp. 818, affirmed 3 Cir., 146 F.2d 414, affirmed 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43, rehearing denied 326 U.S. 810, 66 S.Ct. 227, 90 L.Ed. 494; Dole Refrigerating Co. v. Amerio Contact Plate Freezers, Inc., 3 Cir., 1959, 265 F.2d 627. See also Consolidated Trimming Corp. v. Loudon, 1956, 99 U.S.App.D.C. 213, 239 F.2d 33, 36, certiorari denied 1958, 357 U.S. 906, 78 S.Ct. 1148, 2 L.Ed.2d 1155; citing Kwikset Locks, Inc. v. Hillgren, 9 Cir., 1954, 210 F.2d 483, certiorari denied 1954, 348 U.S. 855, 75 S.Ct. 78, 99 L.Ed. 673. For the reasons above stated, I find the plaintiff's device was not patentable invention.

The plaintiff argued, as previously mentioned, that the existence of a genuine issue of material fact precluded the present motion. In this regard, reference was made to certain affidavits, submitted by the defendant upon the motion, purporting to disclose that on March 5, 1954 a brochure was printed for Price Brothers Co., of Dayton, Ohio, for its use in soliciting purchases of automobile parking blocks manufactured by that company. It also appears from the affidavits that this brochure was first distributed to the customers of Price Brothers on July 16, 1954, although it appears to have been copyrighted in 1953. This publication describes and illustrates Price parking block bumper units as being easy to install on cinders, blacktop or concrete by driving steel pins through two precast holes in each unit. The units are made of concrete and are readily removable by pulling the pins and lifting the blocks. Each unit is provided with cut-away areas at the bottom permitting ground drainage. There appears to be nothing in the brochure contemplating the joinder in linear succession of a series of these blocks, nor is either end of any of these blocks provided with a tongue-and-groove means for such joinder. It is not disclosed whether the pins referred to in the description in the brochure are headed or headless. Another affiant discloses that a plot plan and details, dated August 27, 1953, submitted for the construction of a parking area for Argonaut Realty Division of General Motors Corp. for the General Motors Training Center at Union, New Jersey, disclosed under the caption "Details for Precast Bumper Blocks" concrete curbs provided with vertical holes extending through the ends thereof, for installation over steel pins previously anchored in position in the parking lot surface, thus rendering the bumper blocks removable and permitting the lifting of them vertically until clear of the tops of the pins or pipes.

Upon the foregoing Price Brothers brochure and the Argonaut Realty Division plans, the moving defendant bases its further contention that the alleged invention in the patent in suit was known and described in a printed publication more than one year prior to the application therefor, and that similar construction was in use prior thereto. 35 U.S. C.A. § 102. Plaintiff, however, has submitted counter-affidavits tending to place in issue some or all of the factual matter so presented by movant.

Because I find the patent in suit invalid in the light of certain of the prior art patents which were not considered by the Examiner or the Board of Appeals, and by reason of the lack of novelty in plaintiff's device, I have disregarded the factual issues presented by the affidavits submitted.

Having concluded that the patent in suit is invalid, the motion for summary judgment must prevail and it becomes unnecessary to consider the issue of infringement.

An order may be presented embodying the conclusions hereinabove stated.