**Charles N. CRESAP, Plaintiff,**

v.

**CHEMPLAST, INC., Defendant.**

Civ. A. No. 893-60.

United States District Court
D. New Jersey.

June 13, 1962.

As Amended June 14, 1962.

William A. Fasolo, Hackensack, N. J., for plaintiff. Logan Cresap, New York

City, and A. Yates Dowell, Washington, D. C., of counsel.

Norman N. Popper, Newark, N. J., for defendant.

MEANEY, District Judge.

The plaintiff herein sues the defendant for infringement of United States Patent No. 2,929,109, dated March 22, 1960, the original application having been filed in United States Patent Office December 30, 1954.

The defendant answers and counterclaims, seeking judgment of invalidity of the patent and non-infringement.

During the year 1954 plaintiff experimented in methods of making articles of certain shapes from Teflon powder, a patented product of duPont Company, by compressing the powder into a preform of the desired shape, removing the preform from the molding contrivance and sintering (baking) it in a separate oven. He successfully molded a shallow dish in the early part of that year and a short time thereafter molded a beaker, four of which were sold to the duPont Company on January 3, 1955. Subsequently, during 1955, "bubble caps" and other shapes (in evidence) were molded by the same method.

Plaintiff, as above indicated, filed a patent application on December 30, 1954 and the patent, as finally approved, was issued on March 22, 1960. Meanwhile he had continued to make and market articles of the indicated shapes molded of Teflon powder. It would appear that previously no molded articles of Teflon had been available in these shapes.

The patent in issue sets forth a method by which Teflon powder is compressed against the walls of a rigid mold by means of an expandable bladder to create preforms of hollow articles having relatively thin longitudinal and transverse walls of equal thickness. These preforms are detached from the molds and then sintered in an oven at a specified temperature and pressure.

The defendant was incorporated in 1953 and commenced doing business in 1954. The founders of the defendant company, Wilton Hawkins and Steven Dorn, had been employed by the duPont Company for some time previous to 1954, in connection with promotion of the use of Teflon in industry. Some time in 1957 the defendant company, becoming aware of the growing interest in Teflon beakers and laboratory ware, began molding these products.

As finally issued the patent No. 2,929,-109, plaintiff's patent, contained the following claims:

"1. The molding of thin walled objects of substantially uniform density and of symmetrical configuration with longitudinal and transverse walls from linear polymeric powder having the characteristics of deformation under load and from which the recovery is slow and incomplete after the load is removed, comprising providing a rigid mold and an elastic inflatable member, assembling the same in the desired relationship with a space therebetween approximating the shape of the object, introducing powdered plastic to fill said space, closing the mold, substantially removing the gas from the space and pressing such powder against rigid mold surfaces of a shape complementary to that of the desired object by applying fluid pressure to the elastic inflatable member to obtain an equally distributed molding pressure everywhere normal to the walls of the object being molded to create a preform of such object, removing the pressure from the preform, separating the preform from the molding surfaces substantially along the axis of symmetry before the preform has recovered from the pressing load, and sintering the

detached preform apart from the pressing apparatus.

"2. The method of claim 1 in which the powder is polytetrafluoroethylene."

These claims must be examined in the light of three provisions of the 1952 Patent Codification Act. These are sections 101, 100(b) and 103 of Title 35 U.S.C. Section 101 states that "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor * * *." The term process is defined in section 100(b) as a "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." Section 103 of Title 35 U.S.C. sets out one of the conditions for patentability and states that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

■■ With the language of section 103 in mind, it may be well at this point to analyze Claim No. 1 with a view to contrasting it with the prior art. If this claim simply represents a combination of already known processes and does not constitute such a novel application of them as would not be apparent to one with ordinary skill in the art to which the subject matter pertains, it may not properly be the subject of a patent. If, however, it constitutes an entirely novel synthesis of pre-existent processes not apparent to one of ordinary skill in and familiarity with the art, a persuasive argument for patentability may exist. The question arising out of the use of a particular product in the process will be referred to hereafter.

The defendant, Chemplast, lists an array of patents which it says clearly demonstrates that every claim made in the patent in suit has been anticipated in the prior art, and further suggests that at least ten United States patents of varying degrees of relevancy to the subject matter of the patent in suit were not cited by the Patent Office, so that the presumption of validity is negated.

Examination of the following patents issued prior to the patent application of the plaintiff herein amply demonstrates that the use of bladder molding was well known in the prior art, as was sintering of the molded product. However, these patents contemplated mainly the use of powdered metal, clay, wood pulp, paper and other suitable materials and did not teach the use of Teflon.

In Senac patent No. 1,023,764, issued April 16, 1912, the use of an elastic pressing member made of a material capable of being expanded by pressure fluid so as to adapt itself to the internal configuration of the mold and transmit the pressure to strips of paper to be molded, is one of the claims.

In the McNeill patent of June 8, 1915, an expansible "chum or core" made of heavy rubber or other similar material is expanded by the introduction of fluid or compressed air, for the purpose of pressing powdered clay between the chum and the mold. In this patent reference is made also to the application of heat to the molded product.

The 1917 grant to Hitchcock, No. 1,221,450, demonstrates the expansible bladder molding of bubble free clay pots in a mold from which the air has been exhausted.

In the Mauersberger patent No. 1,149,669 an expansible impervious core, expanded by supplying a fluid to the core, is shown as pressing paper pulp against the mold.

In patent No. 1,637,532 (Oliver & Culver), August 2, 1927, reference is made to a flexible diaphragm made of rubber or other suitable material to transmit pressure on wet pulp.

In the Porter patent No. 1,637,707, August 2, 1927, an expansible membrane is

used to mold ceramic-like materials such as clay.

And similarly in Schwarzkopf patent No. 2,447,434, issued August 17, 1948, the expanding molding element is an expansible bladder.

In Demarest patent No. 2,696,184, December 7, 1954, reference is made to a hollow male die member of resilient material, capable of being expanded by the introduction of fluid under pressure.

And the Young patent No. 2,363,107, granted in 1944, teaches the compression molding of accreted fibrous plastic articles by means of an expansible bladder.

The Squires patent No. 2,710,991, applied for in Great Britain January 26, 1950, and January 18, 1951 in the United States, speaks of a wholly or partly elastic container designed to receive pressure fluid when inserted in a rigid mold. The patent claims a method of producing sheets of Teflon from Teflon powder by the process of bladder molding and subsequent sintering.

The Sanmarti patent specification No. 152,635, application date in the United Kingdom June 18, 1920, also refers to an expansible container of pressure fluid designed to exert pressure against the walls of a rigid mold for the purpose of molding articles of ceramic and other plastic materials.

The foregoing are not all of the prior art referring to articles manufactured by pressure produced on substances by an expandable bladder that is placed within rigid molds or split molds. Thus it would seem that bladder molding is old in the prior art.

Nor is there any question in the court's mind that the well-known application of sintering to preformed objects was equally a matter of common knowledge. These practices had been used in the molding of the materials referred to, but particularly powdered metal and clay.

Further included in Claim No. 1 of the patent in suit is substantial removal of gas from the space filled by the powdered plastic, which seems to be a step used by neither the plaintiff nor the defendant in their processes. Both parties assert that the gas escapes through the joints of the component parts of the rigid mold employed by each. Originally the plaintiff had stressed the use of vacuum clearance of the gas or the use of porous material. Neither of these means is specifically referred to in Claim No. 1 of the patent.

So that insofar as the physical makeup of the apparatus used is concerned, there would seem to be nothing novel or particularly distinguishable from what is contained in the prior art.

Now comes the question of the inventiveness of Claim No. 2, that is, whether the use of polytetrafluoroethylene instead of any other material constitutes patentable improvement over what has been known in the art. It was generally known that Teflon was compressible and that when compressed it retained the shape into which it was preformed sufficiently long to be sintered, when it became permanently shaped. True, the objects made before the earliest beakers of plaintiff were in the main solid pieces, rods or pipes. But the qualities of Teflon were sufficiently known in 1950 to warrant the following statement in the Squires patent No. 2,710,991; in Col. 1, lines 35–41:

"In producing articles from polytetrafluoroethylene it is usual to apply the methods of powder metallurgy, the article being formed by the steps of introducing very finely divided powder into a mould, compressing the powder to the desired shape in the mould, heating the preform thus produced to a sintering temperature and then cooling the sintered article."

It remains an incontrovertible fact that the plaintiff Cresap was the first to put into practice the idea of using Teflon rather than powdered metal in an expandable bladder mold, but primacy is not the only test to be applied. In addition to being first in the field the innovator must have hit upon something which would not be apparent to one with ordinary skill in the subject matter of the patent. That he expended time and

effort and made sacrifices to effect his object is not sufficient reason to warrant the conclusion that his results were of a patentable nature. If he simply applied a new material, whose properties were well known to an old art, whose applicability was well known, he has not really invented anything.

The literature refers to the use of Teflon in the manner used in powder metallurgy, vide the lecture of Hawkins on March 12, 1952, when he stated that the molding of Teflon is accomplished by techniques very similar to those used in powder metallurgy and spoke of preforming the cold powder in the desired shape, with subsequent sintering of the preform in an oven.

W. C. Fergusson in the August 20, 1949 issue of "Chemistry and Industry" pointed out characteristics of fluorocarbon compounds, among which is Teflon, making them compressible cold, to form a strong preform that is tough and non-porous after sintering. He pointed out that a steel mold should be used, care being taken to spread the powder as evenly as possible, and further suggested that the preforms are strong enough to handle for transfer to the oven for treatment.

Also in the Squires patent, application filed on January 18, 1951, patent No. 2,710,991 issued June 21, 1955, reference is made in Col. 1, lines 37–41, to application of the methods of powder metallurgy to a polymer of tetrafluoroethylene, by "introducing a very finely divided powder into a mould, compressing the powder to the desired shape in the mould, heating the preform thus produced to a sintering temperature and then cooling the sintered article." True, this process was recommended for the production of sheet-like articles. However, the specifications clearly suggest the use of polytetrafluoroethylene for molding after the manner of molding used in powder metallurgy.

And in the 1948 Fields patent No. 2,-456,262, polytetrafluoroethylene was used to produce shaped bodies by pressure, removal of the shaped body from the die and subsequent sintering. The patent does not refer to any method of producing cupshaped objects with thin walls.

Much has been made of the fact that plaintiff Cresap after molding his products conducted extensive measurements of them and came to certain conclusions with reference to their expansion or contraction after such molding. But these measurements were not what led him to the use of Teflon, but provided him with what was, for him, a satisfactory explanation for the ease of extraction from the mold. The measurements were not among the factors that led him to the use of that product in his experimentation. Plaintiff insists that he had no familiarity with the processes used in powder metallurgy, including the use of bladder pressure for molding of preforms with subsequent sintering. Whether or not this is so, the only basis for his claim of invention seems to this court to be his initial use of polytetrafluoroethylene powder as suitable material for the purpose of making beakers and other laboratory articles by a combination of processes old in the prior art. If that meets with the necessary requirement for patentable novelty, then he has accomplished his purpose.

Although section 100(b) of the Patent Act provides for the patenting of a new use of a known process, the new use must also be inventive. This requirement of invention is well set forth by Judge Wortendyke in Alco Kar Kurb, Inc. v. Ager, 181 F.Supp. 97, 101 (D.N.J. 1960), affirmed 286 F.2d 931 (3d Cir. 1961):

"Invention does not consist in the mere conception of applying an old device to a new use if the new use is so analogous to the old that the thought of adopting the device and applying it to the new use would occur to one skilled in the art who might be seeking to devise means to perform the desired function. Even though some changes or modifications are necessary to the practical application of the device to the new use, the conception of such ap-

plication may still not constitute invention."

It is manifest to this court that there is an analogy between the bladder molding of metal or clay powder and the bladder molding of Teflon powder. But in the present case there is not even the necessity for drawing analogies as there are explicit references in the prior art to the fact that powder metallurgical techniques are applicable to the molding of powdered Teflon.

To this court the use to which plaintiff put Teflon powder and the means he used in molding it were so clearly set forth in the prior art that any one familiar with the prior art could have arrived at the same result. As stated previously, the mere fact that Cresap was first in the field, of itself, does not establish patentability of what he has accomplished.

The court is of the opinion that plaintiff's patent No. 2,929,109 is invalid.

In passing, two other contentions of the defendant will be considered:

1. Insofar as the defense that the plaintiff publicly practiced and used his invention more than one year before the effective date of his claims is concerned, the court finds no convincing evidence to this effect.

2. With regard to the defense of estoppel, it appears to the court that the abandonment of claim 20 as indicated in the file wrapper, is of no import. There would appear to be sufficient inclusion of the subject matter of the claims in the application as filed, so that the abandonment of claim 20 is not material. In view of the foregoing, there seems to be no merit to the argument of invalidity based upon the failure of plaintiff to file a new oath.

Once again we have a situation where industry and sacrifice have gone into the development of a process with a result that, however commendable, does not meet the requirements of new invention or novel application or combination of existing ideas. Every step of the process patent in issue has been part of the prior art and the only possible claim for novelty is in the substitution of a new material instead of the materials hitherto employed in the operation.

The mere fact that Cresap observed that a market could develop for beakers and straightway decided to use Teflon for this purpose, is not enough to constitute the novelty required for patentability. This is particularly true in view of the fact that the plaintiff himself admitted that beaker-like shapes of Teflon could be made by devices to be found in the prior art which taught compression molding of powders.

The opinion of this court that the patent is invalid rests solely on its finding that there is nothing in the claims which is either of patentable novelty or not to be found in the prior art.

Let an order be submitted in conformity herewith.